**ERNEST W. HAHN, INC., a corporation, Plaintiff,**

**v.**

**Hugh B. CODDING and Codding Enterprises, a corporation, Defendants.**

**CODDING ENTERPRISES, a corporation, Plaintiff,**

**v.**

**ERNEST W. HAHN, INC., a corporation, Defendant.**

**Nos. C–75–2706 WWS, C–76–2424 WWS.**

United States District Court,
N. D. California,
Civil Division.

Dec. 22, 1976.

---

Michael N. Khourie, Broad, Khourie & Schulz, San Francisco, Cal., William N. Willens, Barrett, Stearns, Collins, Gleason & Kiney, Torrance, Cal., for Ernest W. Hahn, Inc.

Shovlin & Babin, Richard J. Archer, Sullivan, Jones & Archer, San Francisco, Cal., William J. Smith, Santa Rosa, Cal., for Hugh B. Codding and Codding Enterprises.

## ORDER DISMISSING COMPLAINTS

SCHWARZER, District Judge.

In view of the recent decision of the Ninth Circuit in *Franchise Realty Interstate Corp. v. San Francisco Culinary Workers,* 542 F.2d 1076 (1976), this Court issued an order directing plaintiffs in *Hahn v. Codding,* C–75–2706, and *Codding v. Hahn,* C–76–2424 (originally filed as a counterclaim), to show cause why their complaints should not be dismissed.[1] Responsive to the order, each side has submitted briefs, and factual material, and has moved to dismiss the other's complaint.

## I. THE HAHN COMPLAINT

In this action, plaintiff Hahn, a developer and operator of shopping centers, sues defendant Codding, a competing developer and operator, for violation of the antitrust laws. The substance of the antitrust charges is found in paragraphs 12 and 14 of the complaint:

"12. Site acquisition, clearing, and preparation within the latter area, Phase III, is to be initially financed by means of Agency bonds, either parking lease revenue bonds, tax allocation bonds, or a combination of both, which the Agency is duly authorized by law to issue. Fundamental to the successful issuance and sale of such Agency bonds is an unqualified opinion from the Agency's bond counsel that the proposed bonds would be valid and enforceable. So long as there is any litigation challenging the validity of Agency action, no matter how frivolous or baseless such litigation might be, the Agency's bond counsel are precluded

---

1. The decision of the Ninth Circuit was issued a month after Judge Peckham's prior ruling here- in denying Codding's motion for summary judgment.

from issuing an unqualified opinion. As a result, the Agency is prevented from implementing the redevelopment plan and Plaintiff is precluded from constructing the proposed shopping center in Santa Rosa during the pendency of such litigation."

"14. . . . (a) Recognizing the tactical significance of litigation in preventing the construction of Plaintiff's competitive shopping center, they have agreed and conspired to file a series of overlapping, repetitive, and baseless lawsuits against the City of Santa Rosa, the Urban Renewal Agency, the Secretary of the United States Department of Housing and Urban Development, and Plaintiff, without probable cause and regardless of the merits of the claims asserted therein. The purpose and effect of those lawsuits has been, and continues to be, to harass the defendants therein, to dissipate the resources of the various governmental agencies and of the Plaintiff, to prevent financing of the project, to increase the cost of the proposed shopping center, and to delay its construction until it is no longer economically feasible as a result of spiralling costs caused by delay and inflation.

(b) For the same purposes as stated above, they have agreed and conspired to covertly and surreptitiously finance and underwrite the litigation costs and attorneys' fees incurred by others to induce them to file sham lawsuits against the governmental agencies and/or Plaintiff, without probable cause and regardless of the merits of the claims asserted therein."

The complaint further alleges that as a proximate result of this conduct:

"(a) Plaintiff has been forced to incur substantial litigation costs and attorneys' fees in defending the numerous sham lawsuits filed by, for, or at the inducement of Defendants challenging the validity of the Santa Rosa Center Project.

(b) Plaintiff's acquisition, site preparation, development and construction costs for the proposed shopping center, initially estimated at Forty-Four Million Dollars ($44,000,000.00), have increased and continue to increase drastically as a result of delay and inflation;

(c) Plaintiff has and will suffer substantial injury to the goodwill of its business and loss of profits as a result of Defendants' unlawful conduct."

██ Hahn's complaint attempts to state a claim for a violation of the antitrust laws under the "sham" exception of the *Noerr-Pennington*[2] doctrine. Those cases established that joint efforts to influence public officials, activities which by their very nature are protected by the First Amendment, do not violate the antitrust laws even though they may have as their object the elimination of competition. *Noerr* recognized in dictum that under certain circumstances a campaign to influence the decisions of public officials may be a "mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor and the application of the Sherman Act would be justified." 365 U.S. at 144, 81 S.Ct. at 533.

The decision in *California Motor Transport v. Trucking Unlimited*, 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972), created a further exception to the *Noerr* protection of First Amendment activity. In *Trucking*, the Supreme Court held that a complaint, alleging that a group of the largest trucking companies in California had conspired to protest every application for competing operating authority by smaller truckers before the State Public Utilities Commission and the Interstate Commerce Commission, stated a violation of the Sherman Act. The *Trucking* Court focused upon the "critical" allegations that the resources of the large trucking firms were used to deny the respondents "free and unlimited access" to

2. *Eastern R.R. Presidents Conference v. Noerr Motor Freight*, 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961). *United Mine Workers v. Pennington*, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965).

the administrative tribunals. The result was that the group of large truckers effectively assumed the power of the license-granting agencies, thus enlarging the group's monopoly power. *Id.*, 404 U.S. at 518, 92 S.Ct. 609.

The *Franchise* decision, *supra*, analyzed the "sham" and *Trucking Unlimited* exceptions to the principle of *Noerr-Pennington*. Judge Duniway concluded that the "sham" exception was limited to situations in which "the defendant is not seeking official action by a governmental body, so that the activities complained of are 'nothing more' than an attempt to interfere with the business relationships of a competitor." (At p. 1081.) To state a claim for relief under the *Trucking Unlimited* exception, the complaint must allege specific activities not protected under the *Noerr-Pennington* doctrine which have barred plaintiff's access to a governmental agency. (At p. 1082.) The court made clear that conclusory allegations of access bar were not enough, since a complaint which could survive motions to dismiss because such a conclusory allegation was pleaded might deter a competitor from presenting its views in the public forum. (At p. 1082.)

■ It is clear that the allegations in this complaint do not fall within the "sham" exception to *Noerr*. Defendants are alleged to have begun "baseless" litigation whose only purpose was the delay or frustration of the project. Whatever their motives in instituting the actions, defendants were obviously seeking official action by a governmental body. By its very nature, litigation is a process which seeks official decision—a determination on the merits of the action by a court. Indeed, such litigation seems almost a necessary outgrowth of large scale urban redevelopment projects such as the proposed Santa Rosa shopping center at issue here. A wide range of laws giving standing to various interests have been created by legislatures in recent years to afford project opponents just such access to the courts.

Even if defendants had an anticompetitive motive in instituting the lawsuits complained of here, that itself is not sufficient to state a violation of Sherman Act Sec. 1. Plaintiff argues that *Otter Tail Power Co. v. United States*, 410 U.S. 366, 93 S.Ct. 1022, 35 L.Ed.2d 359 (1973), *on remand*, 360 F.Supp. 451 (D.Minn.1973), *aff'd mem.*, 417 U.S. 901, 94 S.Ct. 2594, 41 L.Ed.2d 207 (1974), established such a claim. In that case, brought under Section 2 of the Sherman Act, 15 U.S.C. Sec. 2, Otter Tail was charged with monopolizing and attempting to monopolize the retail distribution of electric service by refusing to sell power at wholesale rates to municipal power systems; refusing to "wheel" power to those systems; instituting and supporting litigation to prevent or delay the establishment of municipal systems; and denying the municipal systems access to other suppliers. On appeal from the District Court decision, the Supreme Court remanded the litigation issue in light of *Trucking Unlimited, supra*, and stated, without so holding, that the Sherman Act "may also apply to the use of administrative and judicial process where the purpose to suppress competition is evidenced by repetitive lawsuits carrying the hallmark of insubstantial claims . . . ." 410 U.S. at 380, 93 S.Ct. at 1031. On remand, the District Court held that the repetitive filing of litigation, which frustrated the sale of revenue bonds to finance the municipal systems, was intended to prevent the establishment of such municipal systems and to preserve the defendant's monopoly position. 360 F.Supp. 451, 451–452 (D.Minn.1973). As Judge Duniway wrote in *Franchise, supra*, the gravamen of the complaint in *Otter Tail* was not the instigation of litigation, per se, but the threat of the use of judicial proceedings to retain monopoly power. (At p. 1084.) Moreover, there the litigation did not stand alone but was a part of a course of conduct which included monopolistic practices clearly outside the scope of the protection of the First Amendment.[3]

3. Having only a motion to dismiss before it, the Court does not rely in its disposition on materials outside the pleading. What has been stated in the text, however, is amply confirmed by the

The most plaintiff has alleged here is that litigation was instituted for an anticompetitive purpose. But an anticompetitive motive is clearly not enough to convert otherwise privileged First Amendment activity into a violation of the Sherman Act. The Court in *Noerr, supra,* declined to find a violation of the antitrust laws even though the publicity campaign of the railroads had as its sole purpose competitive injury: "[We] hold that, at least insofar as the railroads' campaign was directed towards obtaining governmental action, its legality was not at all affected by any anticompetitive purpose it may have had." 365 U.S. at 139–140, 81 S.Ct. at 531. For this court to find that an allegation that litigation has been brought for an anticompetitive purpose states a claim under the antitrust laws would be to go further than any of the authorities, and would effectively discourage litigants from bringing lawsuits for fear of possible liability under the antitrust laws.

The Hahn complaint does not state a claim for a *Trucking Unlimited* type violation. Plaintiff has not alleged in his complaint that the litigation instituted by Codding, or the efforts of Codding to induce others to file lawsuits, has in any way barred access to a governmental agency which controls entry to the market. Nor can the *Otter Tail* case be read as allowing a "sham" litigation claim without an access-bar allegation. The Court there specifically remanded in light of the *Trucking Unlimited* decision, 410 U.S. at 379–380, 93 S.Ct. 1022, and Judge Browning, dissenting in *Franchise,* viewed *Otter Tail* as no more than a reaffirmation of the *Trucking Unlimited* principle

". . . that repetitious institution of proceedings before an adjudicatory tribunal may violate the Sherman Act if it reflects an intention to restrain competition by denying competitors meaningful access to the tribunal." (At p. 1087.)

█ The gravamen of Hahn's complaint is that the series of lawsuits instituted or financed by Codding has interfered with and is jeopardizing the construction of Hahn's project, because while litigation is pending, the Urban Renewal Agency of the City of Santa Rosa cannot issue and sell bonds to be used to "initially finance" Phase III of the project. The delay in issuance of the bonds, it is alleged, has precluded the plaintiff from constructing the shopping center during the pendency of the litigation.[4] But this consequence of litigation, affecting a method of financing of one part of a large shopping center, does not constitute a bar to meaningful access to an administrative agency, or to the market. Unlike the situation in *Trucking Unlimited,* defendants here have not effectively usurped the authority to permit plaintiff to operate in the market. Furthermore, the pendency of litigation has not completely foreclosed plaintiff's ability to undertake construction of the shopping center, as it completely barred the municipalities in *Otter Tail* from establishing their own power systems. Under *Franchise,* the conclusory allegation that plaintiff has been "precluded" from constructing the shopping center is inadequate to state a claim.

Statement of Facts in Support of Complaint filed by Hahn. Taking the facts therein set forth as true, for purposes of this motion, they show in substance nothing more than that Codding fought the proposed competing Hahn project by resort to various legal remedies, some pursued by his economic allies, and none of which appear so far to have succeeded. None of the conduct described appears to fall within the scope of prohibited restraints of trade.

4. An affidavit of an attorney for Santa Rosa, filed by plaintiff herein on October 8, 1976, states that the Santa Rosa Urban Renewal

Agency is in the process of negotiating interim financing for the project, pending issuance of the project bonds. According to the affidavit all of the approximately fifteen lawsuits challenging the project (not all of which were evidently brought by Codding) have now been favorably disposed of at the trial court level (including *Rohnert Park v. Lynn,* C–74–2429, in which this Court recently granted summary judgment). The affidavit implies strongly that dismissal of these cases at the trial court level will clear the way for interim financing pending final disposition of all litigation.

The instant case is, if anything, even weaker than the complaint which was dismissed in *Franchise*, for there it could at least be argued that the protests or proceedings carried out by defendants before the Board of Permit Appeals had the purpose or effect of *denying plaintiff access to an agency without whose approval it could not enter into business.*[5] In the present case, the litigation is entirely collateral. While it might have had an adverse effect on Hahn's ability to proceed with its project, the government agencies in which it was instituted did not regulate the project in the sense that access to them was a necessary prerequisite to the project, and hence to the ability to compete. Thus, to allow this action to proceed would go far beyond the holding and reasoning of *Trucking Unlimited* and *Otter Tail* and would be wholly without support in the decided cases. Hahn's position, carried to its logical extreme, would make any suitor vulnerable to antitrust attack by a competitor on the strength of any lawsuit alleged to be economically disadvantageous to the competitor. That position is untenable.

▋▋ Nor does the allegation that defendants solicited others to bring lawsuits, standing alone or in conjunction with the charge that Codding brought sham lawsuits, create a claim cognizable under the antitrust laws. Such expressive activities are clearly protected by the First Amendment and do not violate the antitrust laws unless they are coupled with activities which tend to deter competitors from free access to the appropriate governmental tribunal. *Franchise, supra,* n.4, at pp. 1081–1082. There is no allegation through the recitation of specific facts that Hahn was in any way barred from access to the governmental authorities whose approval was essential for this project.

▋ This memorandum of decision does not pass on the question whether Hahn may have state law remedies such as are claimed in the remaining counts of the complaint. If the Sherman Act claims fail, pendent jurisdiction over the state law claims fails.

For the reasons stated, the complaint must be and it hereby is dismissed. Plaintiff shall have thirty days from the date of filing of this decision within which to file an amended complaint.

## II. THE CODDING COMPLAINT

Defendant Hahn has moved to dismiss Codding's complaint for failure to state a claim.

Paragraphs 8 through 10 of the first claim for relief purport to allege violations of Sections 4 and 16 of the Clayton Act, 15 U.S.C. Secs. 15 and 26. Paragraph 8 is nothing more than a mere conclusory allegation which tracks the language of the statute. Paragraph 9, on the whole, enumerates lawful activities undertaken in connection with the development of a regional shopping center. The only possible bases for antitrust violation are contained in paragraph 9(e) and (g). Paragraph 9(e) alleges that Hahn obtained the imposition of a building permit moratorium against Codding's shopping center to prevent Codding from obtaining additional tenants. The petitioning of a government agency, even for an anticompetitive purpose, does not constitute an antitrust violation under the *Noerr-Pennington* doctrine, and there is no allegation that Hahn's lobbying activity with the building permit authorities denied Codding free and meaningful access to

---

5. *Hahn's memorandum seems to recognize this limitation of the decisions but seeks to avoid it:*

   ". . . the critical intent is whether the defendant invokes the judicial process as part of a genuine effort to induce the court to take governmental action which might cause a restraint or permit a monopoly. In such a case, and absent the other types of unethical conduct discussed by Justice Douglas, use of litigation should be protected. Where, however, the defendant's use of litigation is mere-

ly a sham, a use of the process rather than the decision, to restrain competitors antitrust sanctions are justified and necessary to protect the courts and competition from such abuse." (Memo. p. 10.)

   But Hahn misses the point which is not whether judicial action may cause a restraint (as any judgment is likely to do) but whether action by a government agency is a prerequisite to entry into competition but is precluded by the defendant's wrongful acts.

those authorities. Similarly, paragraph 9(g) alleges that Hahn filed a series of baseless lawsuits against Codding. Such conduct is also protected under the *Noerr-Pennington* doctrine. (See pp. 915–916, above.) Paragraph 10 of the first claim does not state a claim for relief, since it is merely a conclusory statement.

The second claim alleges that the joint venture agreement of Hahn, Sears, Macy's and Robert Campbell violates Section 7 of the Clayton Act (15 U.S.C. Sec. 18) and Section 1 of the Sherman Act (15 U.S.C. Sec. 1). The Section 7 claim must be dismissed because that statutory provision is specifically aimed at remedying the anticompetitive effects of *corporate* acquisition and mergers, *U.S. v. American Building Maintenance Industries,* 422 U.S. 271, 95 S.Ct. 2150, 45 L.Ed.2d 177 (1975), or of corporate joint ventures, *U.S. v. Penn-Olin Chemical Co.,* 378 U.S. 158, 84 S.Ct. 1710, 12 L.Ed.2d 775 (1964). Since the joint venture here is a partnership agreement (involving the acquisition of neither the stock nor the assets of a corporation), it cannot be the basis of a violation of Clayton Act Section 7. The alleged Sherman Act Section 1 violations consist merely of conclusory statements and therefore should be dismissed.

The third claim for relief alleges violations of Sections 1 and 2 of the Sherman Act, and the Robinson-Patman Act. None of the paragraphs of this claim allege sufficiently either a conspiracy, or any wrongful conduct committed for the purpose of monopolizing the market for shopping center retail space. Paragraph 31(c) alleges what sounds to be a violation of the Robinson-Patman Act arising from Hahn's practice of differential pricing of land prices and rentals. But real estate is not a commodity, and the Robinson-Patman Act has been held inapplicable to either the sale or leasing of land. *Plum Tree, Inc. v. N.K. Winston Corp.,* 351 F.Supp. 80 (S.D.N.Y.1972).

Accordingly, the complaint is hereby dismissed, and plaintiff is given 30 days from the date of the filing of this order to amend its complaint. The claims for relief under Section 7 of the Clayton Act, and under the Robinson-Patman Act, are dismissed without leave to amend.

IT IS SO ORDERED.