601 F.2d 1040
 1979-1 Trade Cases 62,663, 1980-1 Trade Cases 63,003
 CITY OF ROHNERT PARK, a municipal corporation, Plaintiff-Appellant,
v.
Patricia Roberts HARRIS, as Secretary of the United States
Department of Housing and Urban Development, City of Santa
Rosa, a municipal corporation, Urban Renewal Agency of the
City of Santa Rosa, a public body, corporate and politic,
and Ernest W. Hahn, Inc., a California Corporation,
Defendants-Appellees.
 No. 77-1017.
 United States Court of Appeals,
Ninth Circuit.
 July 24, 1979.
 
 Wm. M. Brinton, San Francisco, Cal., for plaintiff-appellant.
 Carl D. Lawson, Washington, D. C., Wm. N. Willens, Torrance, Cal., Richard E. Brandt, Sacramento, Cal., John J. Powers, III, Washington, D. C., for defendants-appellees.
 Appeal from the United States District Court for the Northern District of California.
 Before WRIGHT and KILKENNY, Circuit Judges, and PFAELZER,* District Judge.
 EUGENE A. WRIGHT, Circuit Judge:
 
 
 1
 The court's opinion of May 9, 1979 has been withdrawn. The appellant's petition for rehearing and suggestion for rehearing en banc have been denied. The following replaces the court's earlier disposition.
 
 
 2
 The City of Rohnert Park sought to enjoin the appellees, City of Santa Rosa, the Urban Renewal Agency of Santa Rosa (Agency), the Department of Housing and Urban Development (HUD), and Ernest W. Hahn, Inc. from developing a regional shopping center as part of an urban renewal project. Rohnert Park asserted that the shopping center project violated §§ 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2 (West Supp.1978), as a restraint of trade and as the product of an alleged conspiracy or attempt to monopolize retail merchandise space in the Santa Rosa trade area. The plaintiff also alleged that Santa Rosa sold the urban renewal land, with HUD approval, at less than fair value in violation of the Housing and Development Act of 1965, 42 U.S.C. § 1460(c)(4) (1969).
 
 
 3
 Upon the appellees' motions for summary judgment, the district court found that Rohnert Park had failed to substantiate its antitrust allegations. Rohnert Park appeals.
 
 FACTS
 
 4
 Rohnert Park and Santa Rosa, located within seven miles of one another, each wanted to develop a regional shopping center. Rohnert Park's master plan, adopted in 1966, designated areas within its boundaries as a commercial zone. The facilities proposed for the zone included a regional shopping center. The city owns two parcels within the commercial zone. Through the use of special assessment funds, it has improved the zone to render it suitable for development.
 
 
 5
 Santa Rosa's regional shopping center plan is part of an urban renewal and redevelopment project in the downtown area. The original urban renewal site, developed pursuant to the California Community Redevelopment Law, Cal. Health & Safety Code § 33000, Et seq. (West 1973), was expanded after an earthquake created additional blighted land in need of redevelopment.
 
 
 6
 Hahn was selected to develop the project. A tentative agreement entered into by the Agency and Hahn prescribed the terms of sale and conditions of development. In consideration for the site, Hahn agreed to pay $2 million, to construct and maintain parking facilities at its expense, and to make them available to the public.
 
 
 7
 Following the Agency's tentative agreement with Hahn, this suit was filed together with others, including a validating proceeding brought by Codding Enterprises[1] in state court. See Codding Enterprises, et al. v. Urban Renewal Agency of the City of Santa Rosa, et al., Nos. 79465, 79762, 81799, 84237 (Sonoma County Superior Court, unpublished opinion filed Dec. 7, 1976), Rev'd and remanded in part, 1 Civil 41188 (Ct.App., unpublished opinion filed Apr. 26, 1978), Hearing denied, (Sup.Ct., June 28, 1978).[2] In the validating proceeding, the superior court held, Inter alia, that there were no state antitrust violations and that the sale price set forth in the tentative agreement was fair and equitable and not in violation of 42 U.S.C. § 1460(c) (4). That holding was not disturbed on review by the state court of appeals.
 
 THE ANTITRUST VIOLATIONS
 
 8
 In this suit, Rohnert Park alleges that the appellees engaged "in a scheme to develop a regional shopping center" in violation of federal antitrust laws.[3] The district court granted summary judgment for the appellees on the ground that the plaintiff failed to show material facts from which a trier of fact could find ongoing violations of the antitrust laws.
 
 
 9
 We need not reach the question whether summary judgment was appropriate on that ground. We conclude, instead, that the district court should have dismissed the action because Rohnert Park lacked standing.
 
 
 10
 Rohnert Park did not seek damages for the alleged antitrust violations. It sought only injunctive relief under § 16 of the Clayton Act, 15 U.S.C. § 26 (West Supp.1978). That section provides in pertinent part:
 
 
 11
 Any person, firm, corporation, or association shall be entitled to sue for and have injunctive relief, in any court of the United States having jurisdiction over the parties, against threatened loss or damage by a violation of the antitrust laws, . . . when and under the same conditions and principles as injunctive relief against threatened conduct that will cause loss or damage is granted by courts of equity, . . .
 
 
 12
 In State of Hawaii v. Standard Oil Company of California, 431 F.2d 1282, 1284-85 (9th Cir. 1970), Aff'd, 405 U.S. 251, 92 S.Ct. 885, 31 L.Ed.2d 184 (1972), we noted that the standing requirements under § 16 of the Clayton Act are broader than those under § 4 of the Act, which provides for recovery of treble damages only by a party injured in his business or property by reason of an antitrust violation. 15 U.S.C. § 15 (1973).
 
 
 13
 To have standing under § 16, a plaintiff must show (1) a threatened loss or injury cognizable in equity (2) proximately resulting from the alleged antitrust violation. Buckley Towers Condominium, Inc. v. Buchwald, 533 F.2d 934, 938 (5th Cir. 1976), Cert. denied, 429 U.S. 1121, 97 S.Ct. 1157, 51 L.Ed.2d 571 (1977); In Re Multidistrict Vehicle Air Pollution M. D. L. No. 31, 481 F.2d 122, 130 (9th Cir.), Cert. denied, Morgan v. Automobile Mfgrs. Ass'n, 414 U.S. 1045, 94 S.Ct. 551, 38 L.Ed.2d 336 (1973).[4]
 
 
 14
 Rohnert Park alleges that if a regional shopping center is constructed as part of the Santa Rosa urban renewal project, it will discourage the development of a similar center in Rohnert Park. Relying upon In Re Multidistrict, 481 F.2d at 130-31, it argues that this threatens injury to interests cognizable in equity, for which it is entitled to § 16 relief.
 
 
 15
 In In Re Multidistrict we discussed two types of interests which can confer § 16 standing upon a state: the interests of citizens asserted by the state as Parens patriae and the state's own proprietary interests. We found that plaintiff states had standing as Parens patriae to seek equitable relief under § 16 in a suit alleging a conspiracy by the automobile industry to suppress antipollution technology.
 
 
 16
 Rohnert Park essentially asserts standing here as Parens patriae on behalf of its property owners, taxpayers, and inhabitants who might be injured by the loss of investment profits and tax revenues if the center is not built in Rohnert Park. Its argument fails because "political subdivisions such as cities and counties, whose power is derivative and not sovereign, cannot sue as Parens patriae, . . ." In Re Multidistrict, 481 F.2d at 131.
 
 
 17
 Political subdivisions may, however, "sue to vindicate such of their own proprietary interests as might be congruent with the interests of their inhabitants." Id. Rohnert Park asserts two such proprietary interests. First, it contends that it acted in a proprietary capacity in raising and disbursing the special assessment funds used to improve the commercial zone. It cites no authority supporting the contention that this is a sufficient proprietary interest under § 16, and we decline to so hold.[5]
 
 
 18
 Second, Rohnert Park argues that as the owner of property within the commercial zone, it possesses the requisite proprietary interests. Part of that property, however, is designated as a library site and the remainder had been set aside for expansion of a waste water facility. It is not clear from the record whether any of this land will be available for commercial use or whether its value will be affected by the location of the regional shopping center.
 
 
 19
 Because it cannot assert the interests of its citizens, and its own proprietary interest is speculative, Rohnert Park fails to show an interest cognizable in equity, the first requirement for standing under § 16. Even if it could establish such an interest, it fails to meet the second requirement for § 16 standing. It has shown neither threat nor harm proximately resulting from a violation of the antitrust laws.
 
 
 20
 Although antitrust violations were not involved in Warth v. Seldin, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975), that case presents an analogous situation. The question there was whether citizens of one town had standing to complain of the tax and revenue consequences and violations of third party rights caused by the zoning practices of a neighboring town which tended to discourage the development of low income and minority residences. The Court stated that
 
 
 21
 (p)etitioners here . . . rely on little more than the remote possibility, unsubstantiated by allegations of fact, that their situation might have been better had respondents acted otherwise, and might improve were the court to afford relief.
 
 
 22
 Warth v. Seldin, 422 U.S. at 507, 95 S.Ct. at 2209-10.
 
 
 23
 Given the trade area, as Rohnert Park defined it, and the limited demand for new retail shopping center space in the area, any competition, whether or not it violates the antitrust laws, might have similar adverse effects on the city's commercial development. Furthermore, Rohnert Park has not made a sufficient showing that, absent the alleged antitrust violations by appellees, its commercial area would have been selected as a site for shopping center development. As in Warth, the question whether these appellants would have benefited but for appellees' actions is entirely speculative. They have not demonstrated potential injury which confers standing to sue under § 16.
 
 THE HOUSING ACT
 
 24
 Rohnert Park alleges that the Agency violated 42 U.S.C. § 1460(c)(4) (1976) and HUD regulations by selling the shopping center land to Hahn at less than fair market value, and that HUD violated the statute and regulations by approving the sale. The city asserts standing under the Housing Act and the Administrative Procedure Act (APA).
 
 
 25
 We hold that the Housing Act does not create a private right of action to sue for violation of its provisions and that Rohnert Park lacks standing under the APA to challenge either HUD's or the Agency's actions.
 
 
 26
 Private Right of Action.
 
 
 27
 The Housing Act defines an "urban renewal project" as
 
 
 28
 undertakings and activities of a local public agency in an urban renewal area for the elimination and for the prevention of the development or spread of slums and blight,
 
 
 29
 42 U.S.C. § 1460(c) (1976). Those undertakings include "disposition of any property acquired in the urban renewal area . . . at its fair value for uses in accordance with the urban renewal plan . . . ." Id. at § 1460(c)(4). HUD's Urban Renewal Handbook 7214.1, ch. 3 (Rev.1974), outlines procedures for establishing "fair reuse value."
 
 
 30
 Because the Housing Act does not expressly provide that private persons may sue to enforce its terms, Rohnert Park may not sue under the act unless there is an implied right of action for such suits.
 
 
 31
 (I)t is only if such a right of action exists that we need consider whether the (appellant) had standing to bring the action . . . .
 
 
 32
 National Railroad Passenger Corp. v. National Association of Railroad Passengers, 414 U.S. 453, 456, 94 S.Ct. 690, 692, 38 L.Ed.2d 646 (1974).
 
 
 33
 In Cort v. Ash, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), the Court set forth four factors to be considered in determining whether a private right of action should be implied. They are (1) whether the plaintiff is "one of the class for whose Especial benefit the statute was enacted," 422 U.S. at 78, 95 S.Ct. at 2088 (citations omitted); (2) whether there is any indication of legislative intent to create a federal right in favor of the plaintiff; (3) whether implication of such a remedy is consistent with the legislative scheme; and (4) whether the cause of action is one "traditionally relegated to state law." Id. (citations omitted). Cf. Keaukaha-Panaewa Community v. Hawaiian Homes Com'n, 588 F.2d 1216, 1222 (9th Cir. 1978), Petition for cert. filed, 47 U.S.L.W. 3684 (Apr. 17, 1979).
 
 
 34
 The Sixth Circuit Court of Appeals has recently analyzed the Housing Act and the Urban Renewal Handbook under the four-part Cort test. M. B. Guran Co., Inc. v. City of Akron, 546 F.2d 201 (6th Cir. 1976). It concluded that regulations enacted pursuant to the statute did not create an implied private right of action for a disappointed contractor to challenge a local agency's failure to comply with competitive bidding guidelines.[6]
 
 
 35
 In applying the test, the court first noted that the central purpose of the Housing Act is " 'the elimination of substandard and other inadequate housing through the clearance of slums and blighted areas, . . . ,' " quoting 42 U.S.C. § 1441. It concluded that "the class for 'whose Especial benefit the statute was enacted' must be the persons who inhabit inadequate housing." 546 F.2d at 204.
 
 
 36
 It next found "no indication of legislative intent to create the remedy sought," either in the statutory language or in the Handbook provisions, and stated:
 
 
 37
 insofar as the existence of a private cause of action would lead to numerous suits against the local authority, the construction of urban projects would be delayed and the underlying purposes of the legislative scheme would be thwarted. Cf. Gibson & Perin Co. v. Cincinnati, 480 F.2d 936, 942 (6th Cir.), cert. denied, 414 U.S. 1068, 94 S.Ct. 577, 38 L.Ed.2d 473 (1973).[7]
 
 
 38
 Id. at 205.
 
 
 39
 Finally, it found that challenges to the "alleged arbitrary action of a state government" were "traditionally relegated to state law." Id.
 
 
 40
 Much of the court's reasoning applies here. Given the purpose of the Housing Act, it is difficult to conclude that an adjacent city which owns no land within the redevelopment project is among the class for whose especial benefit the statute was enacted.
 
 
 41
 Although there is statutory language which requires that urban renewal land be sold at fair value, nothing in the statute or the regulations indicates legislative intent to allow private parties to sue if the land is sold at less than fair value. HUD must approve the appraisals when urban renewal property is sold. The regulatory scheme provides for HUD oversight, not private action, to enforce agency compliance with the fair price provisions. Cf. Berry v. Housing and Home Finance Agency, 340 F.2d 939, 940 (2d Cir. 1965); Johnson v. Redevelopment Agency of the City of Oakland, Cal., 317 F.2d 872, 874 (9th Cir. 1963).
 
 
 42
 Here, as in M. B. Guran, the existence of a private cause of action would thwart the underlying purposes of the legislative scheme by encouraging litigation which would delay the construction of urban renewal projects.
 
 
 43
 Finally, Rohnert Park's claim against the Agency is one "relegated to state law." California provides for a validating proceeding in which interested parties may assert challenges to actions of urban renewal agencies. Cal. Health & Safety Code § 33501 (West 1973). The precise question of the validity of the Agency's determination of fair reuse value and its compliance with HUD regulations was decided adversely to Rohnert Park's position in the state validating proceedings prosecuted simultaneously with this action. Codding Enterprises v. Urban Renewal Agency of Santa Rosa, Nos. 79465, 79762, 81799, 84237 (Sonoma County Superior Court, unpublished opinion, filed Dec. 7, 1976), Rev'd and remanded in part on other grounds, 1 Civil 41188 (Ct.App., unpublished opinion filed Apr. 26, 1978), Hearing denied, (Sup.Ct., June 28, 1978).[8]
 
 
 44
 All four Cort criteria militate against implying a cause of action to sue the Agency for violating the Housing Act. Although the fourth criterion does not support a similar conclusion as to HUD, we hold nevertheless that Rohnert Park has no private right of action to sue HUD under the act. It has an adequate remedy against HUD under the Administrative Procedure Act, 5 U.S.C. § 702 (1976), if it can meet the standing requirements of that section.
 
 
 45
 The Administrative Procedure Act.
 
 The Administrative Procedure Act provides:
 
 46
 A person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof.
 
 
 47
 5 U.S.C. § 702 (1976).
 
 
 48
 We note at the outset that this provision does not create a right of action against the Agency because it is not an "authority of the Government of the United States." 5 U.S.C. § 701(b)(1) (1976). See also Gibson & Perin Co. v. City of Cincinnati, 480 F.2d 936, 941 (6th Cir. 1973). HUD clearly is an "agency" within the statutory definition, therefore the relevant question is whether Rohnert Park has standing under § 702.
 
 
 49
 The city relies upon Association of Data Processing Service Organizations, Inc. v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970), in which plaintiffs asserted standing under § 702 to challenge a ruling by the Comptroller of the Currency, based upon their status as competitors of national banks. The case established that plaintiffs seeking standing under § 702 must meet the minimum constitutional requirements of Article III. "The first question," according to the Court, "is whether the plaintiff alleges that the challenged action has caused him injury in fact, economic or otherwise." 397 U.S. at 152, 90 S.Ct. at 829.
 
 
 50
 A more recent case involving § 702 sheds more light upon the injury-in-fact requirement. In Simon v. Eastern Ky. Welfare Rights Org., 426 U.S. 26, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976), the Court explained:
 
 
 51
 (W)hen a plaintiff's standing is brought into issue the relevant inquiry is whether, assuming justiciability of the claim, the plaintiff has shown an injury to himself that is likely to be redressed by a favorable decision. Absent such a showing, exercise of its power by a federal court would be gratuitous and thus inconsistent with the Art. III limitation.
 
 
 52
 426 U.S. at 38, 96 S.Ct. at 1924 (footnote omitted). It continued:
 
 
 53
 (I)ndirectness of injury, while not necessarily fatal to standing, "may make it substantially more difficult to meet the minimum requirement of Art. III: to establish that, in fact, the asserted injury was the consequence of the defendants' actions, or that prospective relief will remove the harm."
 
 
 54
 426 U.S. at 44-45, 96 S.Ct. at 1927, Quoting Warth v. Seldin, 422 U.S. 490, 505, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975).
 
 
 55
 The injury asserted by Rohnert Park is potential, not actual: reduction in value of its property and that of its residents, and reduction in future tax revenues because of the inhibiting effect of the Santa Rosa project upon its commercial development.
 
 
 56
 The allegedly illegal agency action is failure to comply with the regulations set forth in the Urban Renewal Handbook 7214.1, Ch. 3 (Rev.1974). Those regulations provide that when urban renewal land with a fair reuse value in excess of $25,000 is sold, HUD must obtain and review two appraisals of the land. One must be by an independent appraiser, but the other may be by "a competent Agency staff appraiser." Id. at 9.
 
 
 57
 In affidavits submitted in support of its motion for summary judgment, HUD asserted that it obtained three appraisals between 1970 and 1972; that they were reviewed by David L. Lane, an independent appraiser, in 1973; that Lane did an updated appraisal in 1975 which established a value of $1,829,520 for the property; and that Leevern Johnson, a HUD Realty Specialist, reviewed all these appraisals and found them "in accordance with HUD requirements." Rohnert Park asks us to "hold unlawful and set aside"[9] the sale of the Agency property because Johnson and Lane failed to consider all factors that Rohnert Park deems relevant in determining the fair reuse value of the land.[10]
 
 
 58
 Although potential injury may be sufficient to confer standing, Linda R. S. v. Richard D., 410 U.S. 614, 617, 93 S.Ct. 1146, 35 L.Ed.2d 536 (1973), the relationship between the injury here and the alleged illegal agency action is too attenuated to meet the minimum Article III requirement.
 
 
 59
 Assuming we were to grant the requested relief, we would have to remand to the district court for a determination of fair reuse value in accordance with the regulations.[11] Assuming that determination resulted in a higher fair reuse value, the sale to Hahn could be declared void. Presumably, Hahn and the Agency would then be free to negotiate a sale based on the higher fair reuse value.
 
 
 60
 Several additional links in the chain of speculation are necessary, however, before we arrive at the point where Rohnert Park would be able to reap the benefits of commercial development within its boundaries. We would have to assume:
 
 
 61
 (1) that Hahn and the Agency would be unable to renegotiate a sale of the property;
 
 
 62
 (2) that their failure to consummate a sale would halt the Santa Rosa project or somehow limit its scope;
 
 
 63
 (3) that businesses now slated for the Santa Rosa shopping center would then choose to locate in Rohnert Park; and
 
 
 64
 (4) that financing would be available to fund an appropriate commercial development in Rohnert Park.
 
 
 65
 Rohnert Park has failed to show that the prospective injury to its proprietary interest "is likely to be reduced by a favorable decision." The scenario that would avert the injury is too "conjectural" and "hypothetical." See O'Shea v. Littleton, 414 U.S. 488, 494, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974).[12] Accordingly, we hold that the city lacks standing to sue under the APA because it fails to meet the fundamental constitutional requirement of injury in fact.
 
 
 66
 We remand for dismissal in accordance with this opinion.
 
 
 
 *
 Of the Central District of California
 
 
 [1]
 Codding Enterprises, a developer based in Rohnert Park, owns shopping centers in the area. It also owns much of the land in Rohnert Park which was to be part of the proposed Rohnert Park shopping center
 
 
 [2]
 Other related actions include an earlier suit by Codding Enterprises, Codding Enterprises v. Urban Renewal Agency of the City of Santa Rosa, 1 Civil 36299 (Ct.App., unpublished opinion filed Oct. 23, 1975), and cross suits by Hahn and Codding Enterprises against one another for antitrust violations, Ernest W. Hahn, Inc. v. Codding, 423 F.Supp. 913 (N.D.Cal.1976)
 
 
 [3]
 The federal antitrust laws require that the alleged violations have some nexus with interstate commerce in order for jurisdiction to exist. The district court assumed that it had jurisdiction, finding a sufficient nexus with interstate commerce. Its position is supported by Hospital Building Co. v. Trustees of Rex Hospital, 425 U.S. 738, 96 S.Ct. 1848, 48 L.Ed.2d 338 (1976). We assume, without deciding, that if Rohnert Park could establish that antitrust violations occurred, the effects on interstate commerce would be sufficient to confer jurisdiction
 
 
 [4]
 One court concluded:
 (i)t is apparent from the language of § 16 that the applicable standing rules in suits to enjoin antitrust violations are the general rules of standing. The plaintiff need show only that he is threatened by injury proximately caused by the defendant.
 Tugboat, Inc. v. Mobile Towing Co., 534 F.2d 1172, 1174 (5th Cir. 1976) (footnotes omitted).
 
 
 [5]
 Appellant cites City of Seattle v. Stirrat, 55 Wash. 560, 104 P. 834, 836-37 (1909), for the proposition that the city had standing to sue as a trustee or agent for its specially assessed property owners and that it has a proprietary interest because it acted in its proprietary capacity in carrying out the improvements paid for by the special assessments
 In Stirrat, the city sued a contractor for money due in connection with work on local improvements. The contractor defended that it had paid the money to the city comptroller, who had absconded with it. The court held that the comptroller's act was ultra vires, but that the city, as trustee of the assessment fund, was estopped from denying the comptroller's authority.
 No one asserts that Rohnert Park may not similarly sue contractors with whom it does business on behalf of its specially assessed residents. Here, however, it attempts to sue a local redevelopment agency, a federal agency, and a contractor with whom it and its residents have no contractual relationship. Stirrat provides no support.
 
 
 [6]
 In Cedar-Riverside Associates, Inc. v. United States, 459 F.Supp. 1290, 1294 (D.Minn.1978), the district court held that there was no implied private right of action which would allow private developers to sue a local redevelopment agency, the city of Minneapolis, the Secretary of HUD, and others for violation of the Housing Act
 The court followed M. B. Guran, in reasoning that plaintiffs, who did not reside within the urban renewal project and were not parties to contracts with the Agency, were not among those for whose "especial benefit the statute was enacted."
 
 
 [7]
 In Gibson & Perin Co., plaintiff businesses who were not located within an urban renewal project sued the city and the local agency, alleging deficiencies in design of a parking garage within the project. They did not sue under the Housing Act, but instead
 charged the defendants with violation of their civil rights, conspiracy, fraud, violation of federal and state antitrust laws, and with everything else that they could think of including the charge of depriving them of due process of law and the equal protection of the laws.
 480 F.2d at 939.
 Although this was not a Housing Act case, the policy considerations addressed by the court are relevant here:
 In our case no review was provided by statute of acts of agencies and private developers of Urban Renewal projects. We think it was because review would frustrate implementation of Urban Renewal plans and would discourage cities and redevelopers who might not want to become embroiled in protracted litigation, particularly after they had expended their money to participate in the project.
 Id. at 942.
 
 
 [8]
 The state court reached the following conclusions of law:
 
 
 [3]
 The Agency's finding that the Hahn Contract was fair and equitable for the land according to its value for reuse, and that the consideration from Hahn was not less than its fair value for uses in accordance with the redevelopment plan, is supported by substantial evidence contained in the record
 
 
 [4]
 The evidence presented at trial was insufficient for the Court to find that the Agency violated 42 United States Code Section 1460(c)(4), the Urban Renewal Handbook Section 7214.1, Health and Safety Code Section 33433 or any other state or federal law with regard to the adequacy of the consideration from Hahn for the shopping center site, or the parts of said site in Phase II and Phase III. The Agency is required to sell property in the redevelopment project area for not less than its fair value for uses in accordance with the redevelopment plan
 According to California Health & Safety Code § 33503 (West 1973), the determination in the validating proceeding precludes relitigation of the same issue. Under this provision, even though Rohnert Park was not a party to the validating proceeding, it would be barred from relitigating the fairness of the site sale price in state court. See City of Ontario v. Superior Court, 2 Cal.3d 335, 341, 85 Cal.Rptr. 149, 466 P.2d 693 (1970) (interested party must bring validating proceeding within time and manner specified by Cal.Civ.Pro. § 860 (West Supp.1978) or be forever barred from contesting the validity of agency action in a court of law).
 Although we do not rest our decision on this ground, we note that the Supreme Court recently decided that entities which finance and control state litigation may be collaterally estopped in federal court from relitigating issues decided in the state action, even though they were not parties in state court. Montana v. United States, --- U.S. ----, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979). Here, the Montana facts are reversed: Codding Enterprises was a party in state court and has financed this litigation by Rohnert Park through contributions to the city's Chamber of Commerce. Deposition of Peter Callinan, Record at 917-20.
 
 
 [9]
 It cites 5 U.S.C. § 706, dealing with scope of review of agency action:
 To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall
 (1) . . .;
 (2) hold unlawful and set aside agency action, findings, and conclusions found to be
 (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; . . .
 5 U.S.C. § 706(1)(A) (1976).
 
 
 [10]
 Although it does not do so clearly, Rohnert Park also seems to argue that it is "aggrieved . . . within the meaning of a relevant statute" because HUD and the Agency's actions were part of a conspiracy to violate the antitrust laws
 We have held that the city lacks standing under § 16 of the Clayton Act to raise its antitrust claims and it may not do so indirectly by means of the APA.
 
 
 [11]
 Were we to remand for further factfinding on the fair price issue, the district court in its discretion could decide to remand to HUD for proceedings in accordance with its specific instructions
 
 
 [12]
 In O'Shea, the Court stated:
 (a)bstract injury is not enough. It must be alleged that the plaintiff "has sustained or is immediately in danger of sustaining some direct injury" as the result of the challenged statute or official conduct. Massachusetts v. Mellon, 262 U.S. 447, 488, 43 S.Ct. 597, 601, 67 L.Ed. 1078 (1923). The injury or threat of injury must be both "real and immediate," not "conjectural" or "hypothetical." Golden v. Zwickler, 394 U.S. 103, 109-110, 89 S.Ct. 956, 960, 22 L.Ed.2d 113 (1969); Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941); United Public Workers v. Mitchell, 330 U.S. 75, 89-91, 67 S.Ct. 556, 564-565, 91 L.Ed. 754 (1947).
 414 U.S. at 494, 94 S.Ct. at 675.