NATIONWIDE MUTUAL INSURANCE COMPANY, Plaintiff,

v.

AUTOMOTIVE SERVICE COUNCILS OF DELAWARE, INC. et al., Defendants.

Civ. A. No. 78–323.

United States District Court, D. Delaware.

May 20, 1980.

Richard E. Poole, Daniel F. Lindley, and Gregory A. Inskip, of Potter, Anderson & Corroon, Wilmington, Del. (Richard C. Beifuss, Columbus, Ohio, of counsel), for plaintiff.

Alfred J. Lindh, Wilmington, Del. (Jonathan T. Howe, of Jenner & Block, Chicago, Ill., of counsel), for defendants.

## OPINION

STAPLETON, District Judge.

The question presented by this motion to dismiss is whether Nationwide Mutual Insurance Co. ("plaintiff") has standing under Section 16 of the Clayton Act, 15 U.S.C. § 26,[1] to seek to enjoin alleged violations of Section 1 of the Sherman Act, 15 U.S.C. § 1, by the Automotive Service Councils of Delaware, Inc., an association of automobile body repair shops, and its members ("defendants"), where Nationwide does not pay the body shops directly but only reimburses its insureds for money paid by them for work done. Defendants claim that Nationwide does not have standing to bring this suit for two reasons. First, they assert that Nationwide is estopped from claiming any injury to it by virtue of admissions it made as a defendant in a related proceeding in Delaware Chancery Court[2] to the effect that it limits reimbursement for auto body repair to charges that it determines are reflective of competitive rates. Second, defendants maintain that any injury claimed by Nationwide is, as a matter of law, too indirect since Nationwide is not a purchaser, competitor, or in a contractual relationship with defendants.[3] I find that Nationwide does have standing and consequently deny the motion to dismiss.

Defendants' estoppel argument is without merit. Nationwide's admissions in the state court proceeding were that it "tries to limit its payments to the competitive cost of repairs"[4] and that it has "the right to make its own evaluation of the extent of damages based on the charges of

---

1. Section 16 of the Clayton Act provides that:
   Any person, firm, corporation, or association shall be entitled to sue for and have injunctive relief . . . against threatened loss or damage by a violation of the antitrust laws . . when and under the same conditions and principles as injunctive relief against threatened conduct that will cause loss or damage is granted by courts of equity, under the rules governing such proceedings . . . .

2. *John Bonaventura et al. v. Nationwide Ins. Co.*, Civil Action No. 4098 (Del.Ch.Ct.1978).

3. Defendants also allege in their motion to dismiss that Nationwide lacks standing because it did not allege any right to pursue claims that

might belong to its policyholders. (Docket No. 50, ¶ 1). This contention was not briefed and is presumed to have been abandoned. It is therefore not necessary for me to reach the question of whether an insurance company fits within the rubric set forth in *Hunt v. Washington Apple Advertising Commission*, 432 U.S. 333, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977), and *Associated General Contractors of North Dakota v. Otter Tail Power Co.*, 611 F.2d 684 (8th Cir. 1979).

4. Docket No. 50, Exh., ¶ 23.

competitive shops and to pay no more than the lowest sum which will properly and completely repair the damaged car."[5] Nationwide reiterated at oral argument on this motion that its policy is to pay no more than the competitive cost of repairs, but it claimed that it is not always able to avoid paying the prices that defendants allegedly fix. Nationwide pointed out, for example, that when an insured's car is towed following an accident to one of the defendants' facilities, it cannot demand that the insured pay the increased towage fees required to reach an alternative shop charging a lower price for the required repair, but must pay the increased price. Further, Nationwide maintains that even if it were able to limit reimbursement in all cases to a "competitive price", it would still suffer injury as a result of that price being raised throughout the industry by defendants' alleged anticompetitive activities. Nationwide's prior admission that it attempts to limit its reimbursement to a competitive price is therefore not inconsistent with its present allegations that it is sometimes forced to pay higher prices than it would have to pay in the absence of defendants' alleged activities and that it is threatened with having to do so in the future.

▮ Defendants also maintain that Nationwide's injury is, as a matter of law, neither direct nor proximately caused by defendants' alleged antitrust violations. It is clear that plaintiff and defendants do not ordinarily deal directly with one another; the pivotal question upon which this motion turns is whether their relationship is too indirect for plaintiff to have standing. In cases arising under Section 4 of the Clayton Act, 15 U.S.C. § 15, the treble damages counterpart to Section 16, indirect purchasers are categorically eliminated as plaintiffs. *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977). Denial of treble damages to this large group of potential plaintiffs is required because of the risk of multiple liability for

defendants, the difficulty of apportioning a recovery among diverse plaintiffs, and the impairment of the incentive of direct purchasers to litigate through dilution of the potential recovery. It is well established, however, that the requirements for standing under Section 4 are much more strict than those under Section 16 and therefore do not provide accurate guidance for determining standing under Section 16. *Mid-West Paper Products Co. v. Continental Group, Inc.*, 596 F.2d 573 (3d Cir. 1979). Standing requirements under the latter section are less rigorous because a defendant's exposure to multiple injunctions does not involve a cumulative burden,[6] the lack of a monetary recovery renders determination of damages unnecessary, and entitlement of one class of plaintiffs to sue does not create a disincentive for other classes. Consequently, under Section 16 a complainant, even if an indirect purchaser, has standing to sue if he can show (1) a threatened loss or injury cognizable in equity that is (2) proximately caused by an alleged antitrust violation. *Mid-West Paper, supra; City of Rohnert Park v. Harris*, 601 F.2d 1040 (9th Cir. 1979). Equitable injury satisfying the first requirement is established if a plaintiff is able to demonstrate "a significant threat of injury from an impending violation of the antitrust laws or from a contemporary violation likely to continue or recur." *Zenith Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 130, 89 S.Ct. 1562, 1580, 23 L.Ed.2d 129 (1968). Proximate cause satisfying the second requirement is established if a plaintiff is able to demonstrate that "under all circumstances prevalent in the real economic world, money is passing from [its] hands into the pockets of the price fixers as a result of the conspiracy, and that no rational pricing decisions by any intermediary will erase this fact." *Mid-West Paper, supra*, 596 F.2d at 593. In the instant case, plaintiff has alleged that it has been and continues to be required to reimburse its insureds

---

5. *Id.*, ¶ 92.

6. "[O]ne injunction is as effective as 100, and, concomitantly . . . 100 injunctions are no

more effective than one." *Hawaii v. Standard Oil Co. of California*, 405 U.S. 251, 92 S.Ct. 885, 31 L.Ed.2d 184 (1972).

for higher than competitive prices that they have paid to defendants for automobile collision repairs as a result of defendants' continuing boycotts, price-fixing, and other predatory practices.[7] This allegation facially satisfies the Section 16 standing requirements.

Defendants argue, however, that Nationwide's injury is, as a matter of law, not proximately caused by defendants' alleged antitrust violations. In support of this argument they have cited cases in which rate payers have been found to lack standing to challenge alleged antitrust violations committed against their utility company that caused the utility to raise its rates;[8] in which the landlord of a building in which a movie theater was a tenant was found to lack standing to sue motion picture distributors for alleged antitrust violations that lowered the amount of rent she was entitled to collect under the terms of the lease;[9] and in which shareholders were found to lack standing to challenge alleged antitrust violations that injured their corporation and resulted in depreciation of the value of its stock.[10] Viewed in the light of the test for proximate cause set forth by Mid-West Paper, none of defendants' cases convince me that the injury suffered by an insurance company in the instant circumstances is too indirect to allow it to maintain a suit for injunctive relief.

In contrast to the instant case, in the rate payer cases cited by defendants an intervening independent rate setting commission was empowered to determine rates charged to plaintiffs. This commission could rationally affect the amount of money flowing from plaintiffs to defendant by deciding, on the basis of external criteria, to pass along to the rate payers varying amounts of the utility's costs.

The landlord case cited by defendants is also distinguishable. In the first place, that case was brought under Section 4 of the Clayton Act, a statute whose strict standing requirements are, as indicated above, inapplicable in determining standing under Section 16. Second, since the lease called for payment of a fixed rent plus an additional percentage of the tenant's gross receipts, the Court determined that the tenant stood as an intervening factor between the plaintiff and the defendant capable of independently affecting the gross receipts, and thereby the financial consequences to plaintiff, through manipulation of business variables. The availability of rational pricing decisions such as scheduling, programming, and sales that could have a financial effect on the plaintiff despite defendant's activities would have defeated a finding of proximate cause under the test set forth in Mid-West Paper.

The shareholder cases cited by defendants are also inapposite, although they turned not on the existence of an independent intervening factor but on primacy of injury and the existence of more appropriate avenues of redress. In those cases, any harm caused by defendants' activities was suffered primarily by the corporation rather than its individual shareholders; therefore the proper mechanism for redress was determined to be a suit in the name of the injured corporation rather than a multitude of personal shareholder suits.[11]

There are no comparable intervening factors insulating an insurance company from the consequences of antitrust violations allegedly committed by body repair shops.

7.   Docket No. 1, ¶¶ 47, 48.

8.   *Jeffrey v. Southwestern Bell*, 518 F.2d 1129 (5th Cir. 1975); *Commonwealth Edison Co. v. Allis-Chalmers Mfg. Co.*, 315 F.2d 564 (7th Cir. 1963).

9.   *Harrison v. Paramount Pictures, Inc.*, 115 F.Supp. 312 (E.D.Pa.1953), aff'd., 211 F.2d 405 (3d Cir. 1954), cert. denied, 348 U.S. 828, 75 S.Ct. 45, 99 L.Ed. 653 (1954).

10.   *Pitchford v. PEPI, Inc.*, 531 F.2d 92 (3d Cir. 1975), cert. denied, 426 U.S. 935, 86 S.Ct. 2649, 49 L.Ed.2d 387 (1976); *Kauffman v. Dreyfus Fund, Inc.*, 434 F.2d 727 (3d Cir. 1975); *Ash v. IBM Corp.*, 353 F.2d 491 (3d Cir. 1965), cert. denied, 384 U.S. 927, 86 S.Ct. 1446, 16 L.Ed.2d 531 (1966); *Loeb v. Eastman Kodak Co.*, 183 F. 704 (3d Cir. 1910).

11.   *See Pitchford v. PEPI, Inc.*, 531 F.2d 92, 97 (3d Cir. 1976).

The insurance company's policyholders are the only potential buffer between the insurer and the repair shops, and they cannot be said to have rational options available in making the decision of how much of defendants' charges to pass on to the insurer since they must absorb any difference between the amount charged by a repair shop and the amount reimbursed by the insurer. The primary harm resulting from defendants' activities does not fall on the insureds but on the insurance company, which reimburses them for the inflated repair costs they involuntarily incur. Consequently, Nationwide is the most appropriate party to bring this litigation.

Defendants' argument that Nationwide must be a purchaser, competitor, or in a contractual relationship with defendant in order to have Section 16 standing is further undercut by recent cases in which a plaintiff found to have standing had none of these characteristics. Standing to sue under Section 16 has been established where plaintiffs were growers and feeders of beef who exclusively sold to and dealt directly with slaughterhouses and were permitted to challenge the allegedly monopsonistic practices of defendant retail food chains. *In re Beef Industry Antitrust Litigation*, 600 F.2d 1148 (5th Cir. 1979). Section 16 standing was also found where plaintiffs were farmers who sued automobile manufacturers for injury to their crops allegedly caused by a conspiracy to reduce motor vehicle air pollution research and to retard development of anti-pollution equipment. *In re Multidistrict Vehicle Air Pollution M.D.L. No. 31*, 481 F.2d 122 (9th Cir. 1973). A professional golfer who was not affiliated with a golf association was also found to have standing to challenge the association's requirement of membership as a prerequisite to tournament admission. *Weser v. Professional Golfers Ass'n. of America*, [1979–2] Trade Cases (CCH ¶ 62,740).[12]

Most important, the Supreme Court has taught that the availability of Section 16 standing should be "conditioned by the necessities of the public interest which Congress has sought to protect." *Zenith, supra*, 395 U.S. at 131, 89 S.Ct. at 1580. Since any injury suffered by plaintiff's individual insureds is minimal, it is unlikely that "the necessities of the public interest" will ever be protected by individual litigation. Although a class action or a government suit might eventually be brought, Nationwide presently stands ready and willing to fill a potential gap in enforcement by stewarding this suit to ensure that defendants comply with the antitrust laws. This objective stands clearly in the public interest, unaffected by countervailing considerations. Accordingly, defendants' motion to dismiss will be denied.

---

**12.** Where Congress has sought to limit antitrust enforcement to direct purchasers, it has used specific language to do so. *See e. g.* § 2(d) of the Robinson-Patman Act, 15 U.S.C. § 13(d). *See also Schoenkopf v. Brown & Williamson Tobacco Corp.*, 483 F.Supp. 1185 (E.D. Pa., filed January 18, 1980); *National Auto* *Brokers Corp. v. General Motors Corp.*, 376 F.Supp. 620 (S.D.N.Y.1974), *aff'd on other grounds*, 572 F.2d 953 (2d Cir. 1978), *cert. denied*, 439 U.S. 1072, 99 S.Ct. 844, 59 L.Ed.2d 38 (1979); *Becker v. Safelite Glass Corp.*, 244 F.Supp. 625 (D.Kan.1965).