ERNEST W. HAHN, INC., a corporation, Plaintiff,

v.

Hugh B. CODDING and Codding Enterprises, a corporation, Defendants.

CODDING ENTERPRISES, a corporation, Plaintiff,

v.

ERNEST W. HAHN, INC., a corporation, Defendant.

No. C 75–2706 RPA.

United States District Court, N. D. California.

Oct. 23, 1980.

Thomas Paine, Broad, Khourie & Schulz, San Francisco, Cal., Stearns, Kim & Willens, Torrance, Cal., for plaintiff.

Norbert C. Babin, Shovlin & Babin, San Francisco, Cal., William J. Smith, co–counsel, Santa Rosa, Cal., for defendant, Ernest W. Hahn, Inc.

Richard J. Archer, Sullivan, Jones & Archer, San Francisco, Cal., for Codding.

## OPINION AND ORDER

AGUILAR, District Judge.

Plaintiff Ernest W. Hahn (Hahn) is a developer who in 1972 was selected by the Urban Renewal Agency of Santa Rosa (Agency) to develop a regional shopping center in downtown Santa Rosa. Defendant Hugh B. Codding and his company Codding Enterprises (collectively referred to as Codding) had also bid for the development contract, but lost out to Hahn. As the losing bidder, Codding has initiated, financed or controlled some sixteen lawsuits challenging the development of the shopping center. Hahn brought this action alleging that Codding's involvement in the various lawsuits seeking to block development of the shopping center constitutes an abuse of the judicial process and a violation of the antitrust laws. The facts surrounding this litigation are more fully explored by the Court of Appeals in its decision this year reversing the District Court's dismissal of this action. See *Ernest W. Hahn, Inc. v. Codding*, 615 F.2d 830 (9th Cir. 1980).

Codding now moves for summary judgment on Hahn's claims, arguing that the lawsuits in which it has been involved are absolutely immune from the antitrust laws because they are environmental and taxpayer actions.

*The Noerr–Pennington Doctrine.*

The resolution of this motion is governed by the Noerr–Pennington doctrine. In *Eastern Railroad Conference v. Noerr Motor Freight*, 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961), a group of trucking companies sued a group of railroads to pre-

vent an alleged conspiracy to monopolize the long–distance freight business. The Court held that no cause of action was alleged insofar as it was predicated upon efforts to influence the legislative branch for the passage of laws or the executive branch for their enforcement. This view was followed in *United Mine Workers v. Pennington*, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965).

The Supreme Court clarified the scope of the Noerr–Pennington rule in *California Transport v. Trucking Unlimited*, 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1971), where it noted that:

"[T]here may be instances where the alleged conspiracy is a mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor and the application of the Sherman Act would be justified." (404 U.S. at 511, 92 S.Ct. at 612).

The Court further stated that a "pattern of baseless, repetitive claims may emerge which leads the factfinder to conclude that the administrative and judicial processes have been abused" (404 U.S. at 513, 92 S.Ct. at 613). In a later case, *Otter Tail Power Co. v. United States*, 410 U.S. 366, 93 S.Ct. 1022, 35 L.Ed.2d 359 (1972), the Supreme Court held that a violation of the antitrust laws may be established by showing an abuse "of administrative or judicial processes where the purpose to suppress competition is evidenced by repetitive lawsuits carrying the hallmark of insubstantial claims" (410 U.S. at 380, 93 S.Ct. at 1030).

*Application of the Noerr–Pennington Doctrine to "Public Interest" Lawsuits.*

Defendant Codding argues that "meritorious public interest litigation," such as the environmental and taxpayer suits it filed against the agency, are immune from the requirements of the antitrust laws. In effect, Codding contends that "repetitive lawsuits carrying the hallmark of insubstantial claims" are not unlawful if they are filed against the government in an effort to suppress competition. This Court does not agree.

While the value of public interest litigation as an indispensable device to prevent government from operating outside the bounds of the law cannot be debated, neither should a party be able to take cover under the cloth of "public interest" when in fact it is that interest which it violates.

The California authority cited by Codding does not suggest otherwise. For example, *Bledsoe v. Watson*, 30 Cal.App.3d 105, 106 Cal.Rptr. 197 (1973), involved only one action—which was not a lawsuit, but a communication by an attorney to a city treasurer— and not a series of sixteen lawsuits. A policy favoring support of public interest lawsuits does not require granting a party a carte blanche to use taxpayer or environmental suits to block indefinitely a commercial enterprise sponsored by the government.

Although defendant Codding claims that *Otter Tail, supra,* does not control the instant case because that suit did not involve public interest litigation, the Court finds language in *Otter Tail* dispositive of this motion: an action for violation of the antitrust laws "appl[ies] to the use of administrative or judicial processes where the purpose to suppress competition is evidenced by repetitive lawsuits carrying the hallmark of insubstantial claims . . ." (410 U.S. at 380, 93 S.Ct. at 1030). Such a cause of action may be made out even where such lawsuits are so–called "public interest" actions.

The application of the principle set forth in *Otter Tail* to the instant case is amply supported both by the previous Court of Appeals decision on this case and by a careful reading of the *Otter Tail* opinion itself. First, the Court of Appeals expressly recognized that *Otter Tail* represented the law which should control in this case. *See* 615 F.2d at 639–40. Second, the suits filed by the Otter Tail Power Company, which were found to violate the antitrust laws, could be classified as "public interest" suits; they were actions filed "against municipalities and their officials who had voted to establish municipal electric power systems" (410 U.S. at 369, 93 S.Ct. at 1025). Although

Codding argues that the animus behind a suit filed against the government may not be questioned, *Otter Tail* represents the contrary position, a position which must prevail.

Codding's contention that development of the shopping center is not a commercial activity, and thus should not be controlled by the antitrust laws, is likewise specious. Although it is true that the suits initiated by Codding were filed against government agencies, they were also inextricably connected with a commercial activity—namely, the development of a shopping center by plaintiff Hahn.

Neither do the "shopping center" cases cited by defendant control the disposition of this motion. *Bracken's Shopping Center, Inc. v. Ruwe,* 273 F.Supp. 606 (S.D.Ill.1967) involved the filing of only *one* suit. More importantly, the case was decided before *Trucking Unlimited and Otter Tail,* and incorrectly states that "resort to the judiciary, even in concert or in an effort to restrict competition, can[not] violate the antitrust laws of the United States," 273 F.Supp. at 607.

The circumstances presented in *Miracle Mile Associates v. City of Rochester,* 1980–1 Trade Reg.Rptr. ¶ 63,207 (2d Cir. 1979) are also inapposite to the situation here. In *Miracle Mile,* the defendant was a municipality, and not a horizontal competitor with the commercial entity standing to benefit from project development. Furthermore, the defendant municipality in *Miracle Mile* had filed only four actions, all relating to wetlands, flood control or water pollution. Here defendant has filed sixteen.

Neither does the holding in *Wilmorite, Inc. v. Eagan Real Estate, Inc.,* 454 F.Supp. 1124 (N.D.N.Y.1977) impress the Court as expressing the controlling law on this point. *Wilmorite* bases its result in part upon the district court's first opinion in this case, 423 F.Supp. 913 (N.D.Cal.1976), a decision which the Court of Appeals has now overruled.

Defendant's argument that the First Amendment guarantee of freedom "to criticize officials and discuss public affairs with impunity," serves to immunize the filing of lawsuits against the government from the antitrust laws is supported by neither case law nor logic. The free speech cases defendant cites are not applicable here because the government would not be preventing defendant Codding from criticizing officials or discussing public affairs. Defendant is simply prevented from attempting to suppress competition by the filing of repetitive "public interest" lawsuits carrying the hallmark of insubstantial claims. The First Amendment has never been interpreted as a guarantee to block indefinitely, through abuse of the judicial process, a governmental agency's effort to proceed with the development of a commercial enterprise.

The Court does not agree with defendant that "[i]f such suits can turn on the mere intent of the party bringing the action, no party will dare file any action which might have an adverse effect on a competitor" (see Defendant's Memorandum in Support of Motion for Summary Judgment, p. 26). It is important to note that such intent, in this context, is established only after a demonstration that the lawsuits are "repetitive" and "carry the hallmark of insubstantial claims." Sham litigation should not be tolerated merely because it is cast in the guise of "public interest" lawsuits. The standard established in *Otter Tail,* and repeated above, affords the courts an equitable criteria by which to determine whether suits brought against the government in connection with a commercial activity were actually initiated with the aim of suppressing competition. As observed in *Ungar v. Dunkin Donuts of America, Inc.,* 531 F.2d 1211 (3d Cir. 1976):

> "[W]e are aware of no principle that courts will not inquire into state of mind where that is relevant; the fact that a given legal line is hard to draw does not excuse judges, and juries, as each case arises, from doing their best to draw it." (531 F.2d at 1276).

Similarly, defendant is incorrect in distinguishing its "legitimate political interest" in proceeding against the Agency from "prior precedent involving commercial disputes"

(see Defendant's Memorandum, p. 24). A party has a legitimate *political* interest in using the court system to prevent or redress commercial wrongs. This interest—which is in fact a *right*—exists whether the complainant's adversary is the government or a private party. But this right to use the courts is extinguished where legitimate use becomes abuse. And abuse of the judicial process may occur in both commercial and public interest litigation. The abridgement of a party's First Amendment rights, in fact, may be more sensitively felt in the commercial setting than in the governmental. As the Supreme Court opined in *Virginia Pharmacy Board v. Virginia Consumer Council*, 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976):

> "As to the particular consumer's interest in the free flow of commercial information, that interest may be as keen, if not keener by far, than his interest in the day's most urgent political debate." (425 U.S. at 763, 96 S.Ct. at 1826).

Finally, defendant's argument that if any of the litigation attacked as an antitrust violation is successful, then the claim fails, must be rejected. Footnote 13 of the Court of Appeals decision makes it clear that the success of the repetitive litigation is only one issue to consider in determining whether the judicial process was abused and an action in antitrust lies. (See 615 F.2d at 841). A party, having cast 100 arrows, should not be automatically absolved of liability because one or a few fortuitously land on or near target.

*Conclusion.*

The Court cautions the parties to note that this opinion does not reach the merits of the instant case. Whether Codding actually initiated the various lawsuits with the intention of restraining trade is a matter to be decided at trial. Likewise, whether the lawsuits effected a restraint on trade represents a causal issue to be settled at trial. But the Court has determined, as a matter of law, that suits against the government, whether they be couched in taxpayer, environmental, or other such characterizations, are not exempt from the rule established in

*Otter Tail* and *Trucking Unlimited.* A party may not seek refuge under the rubric of "public interest litigation" when his actions militate against that very public interest for which he seeks protection.

IT IS HEREBY ORDERED that defendant's motion for summary judgment is denied.