**ENERGY CONSERVATION, INC.,**
**Plaintiff-Appellee,**

v.

**HELIODYNE, INC., Defendant-Appellant.**

**No. 81–4662.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 15, 1982.

Decided Feb. 1, 1983.

Bartholomew Lee, Paige Leslie Wickland, San Francisco, Cal., for defendant-appellant.

Jan T. Chilton, Severson, Werson, Berke & Melchior, Albert B. Wenzell, Jr., St. Clair, Zappettini, McFertridge, San Francisco, Cal., for plaintiff-appellee.

Before MERRILL and POOLE, Circuit Judges, and ROTHSTEIN *, District Judge.

POOLE, Circuit Judge:

Energy Conservation, Inc. (ECI) appeals the dismissal of its antitrust action for failure to state a claim. In its complaint ECI alleged that Heliodyne and its coconspirators brought a lawsuit in state court for the purpose of generating publicity adverse to ECI, with the intent to monopolize or attempt to monopolize the relevant market in violation of section 2 of the Sherman Act, 15 U.S.C. § 2. The district court dismissed the action either because it rationalized that the complaint treated the state court lawsuit as a sham action, and that a single lawsuit could never constitute a sham under the *Noerr-Pennington*[1] doctrine, or because the complaint lacked sufficient specificity. In the aftermath of this court's recent decision in *Clipper Exxpress v. Rocky Mountain Motor Traffic Bureau,* 690 F.2d 1240 (9th Cir.1982), issued after the district court's order of dismissal and the benefit of the reasoning of which was not available to that court, we reverse and remand for consideration in the light of *Clipper Exxpress.*

FACTS

ECI's complaint alleged that Heliodyne, ECI's competitor in the solar energy field, conspired with a law firm, which it named as a defendant, and with clients of that firm, also made defendants, to bring a sham suit against ECI in California state court.

Heliodyne itself did not sue as plaintiff in the state court proceedings; only its coconspirators were parties. The complaint sets forth six claims for relief: one federal claim alleging a conspiracy in violation of section 2 of the Sherman Act, 15 U.S.C. § 2, and five pendent state claims. The district court dismissed the federal cause of action and accordingly also dismissed, without prejudice, the pendent state claims. Plaintiff had filed a request for discovery, but no discovery was conducted.

SHAM EXCEPTION TO THE NOERR–PENNINGTON DOCTRINE

ECI alleges that the filing of the state action by the defendants constitutes a violation of section 2 of the Sherman Act because through it they were attempting to monopolize the relevant market by driving ECI out of business. Defendants assert that the district court properly determined that the bringing of the lawsuit was immunized from antitrust liability because of the *Noerr-Pennington* doctrine.

The Supreme Court has held in *Noerr Motor Freight, supra,* that bona fide attempts to influence the legislature are immune under the first amendment from antitrust scrutiny, regardless of the anti-competitive purpose behind such attempts. This was reaffirmed in *United Mine Workers v. Pennington, supra.* Seven years later the Supreme Court held that the *Noerr-Pennington* doctrine also applies to attempts to influence administrative and judicial bodies. *California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 510–511, 92 S.Ct. 609, 611–612, 30 L.Ed.2d 642 (1972).

Attempts to influence the government or the courts that are merely a "sham" enjoy no antitrust immunity under the *Noerr-Pennington* doctrine, however. In *Trucking Unlimited* the court gave an example of sham conduct: "[o]ne claim,

---

* The Honorable Barbara J. Rothstein, United States District Judge for the Western District of Washington, sitting by designation.

1. See *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.,* 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961); *and see United Mine Workers v. Pennington,* 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965).

which a court or agency may think baseless, may go unnoticed; but a pattern of baseless, repetitive claims may emerge which leads the factfinder to conclude that the administrative and judicial processes have been abused." 404 U.S. at 512–13, 92 S.Ct. at 612–13. After *Trucking Unlimited,* the lower courts were left to determine whether a single lawsuit could be sufficient conduct to invoke the sham exception and to determine when a lawsuit may constitute a "sham."

This court recently considered in detail the nature of the sham exception to *Noerr-Pennington.* In *Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau,* 690 F.2d 1240 (9th Cir.1982), plaintiff Clipper Exxpress sued defendants for various antitrust violations arising from protests filed with the Interstate Commerce Commission by defendants against certain shipping rates published by Clipper Exxpress. Defendants contended that *Noerr-Pennington* shielded them from antitrust liability, and that the sham exception could not apply because they had only challenged a single tariff. Relying on the language quoted above from *Trucking Unlimited,* defendants argued that the sham exception would not apply where no pattern of repetitive claims was present. 690 F.2d at 1255.

This court, looking to the theoretical underpinnings of the doctrine,[2] rejected that contention and concluded instead that "it is unnecessary to allege and prove more than the institution of a single suit or protest to invoke the sham exception." 690 F.2d at 1255. (footnote omitted). We noted that the application of the antitrust laws need not be waived when the bringing of a suit is solely an effort to interfere directly with a

competitor, because such a sham suit is not an exercise of first amendment rights and is therefore not entitled to first amendment protection. *Clipper Exxpress,* 690 F.2d at 1256. We explained:

> If the activity is not genuine petitioning activity, the antitrust laws are not suspended and continue to prohibit the violating activities. Because application of the antitrust laws is not suspended, it will prohibit sham activity, whether that activity consists of single or multiple sham suits. This analytical framework does not permit a conclusion that single sham suits are protected under *Noerr.*

*Id.*

## THE DISTRICT COURT HOLDING

The district court, in dismissing ECI's complaint, issued a two sentence decision, the second sentence of which stated:

> It does not appear from the complaint as presently pleaded that the lawsuits alleged to have been filed by defendants in furtherance of the objectives of an allegedly unlawful conspiracy are repetitive, baseless and undertaken solely for anti-competitive purposes. *See Hahn, Inc. v. Codding,* 615 F.2d 830 (9th Cir. 1980).

We cannot dismiss the possibility that the district court based its ruling on the belief that proof of *repetitiveness* in the filing of the baseless suits was an essential element of the sham exception. The words of the holding are used in the conjunctive: "It does not appear ... that the law suits ... are repetitive, baseless *and* undertaken solely for anti-competitive purposes" (emphasis added). Moreover, the citation of the *Hahn* case suggests that the district court be-

---

2. The *Noerr-Pennington* doctrine is itself a judicially created exception to the application of the antitrust laws based on the first amendment. First amendment protection is extended and application of the antitrust laws suspended because a legitimate effort to influence government action is part of the guaranteed right to petition.

The sham exception, on the other hand, reflects a judicial recognition that not all activity that appears as an effort to influence government is actually an exercise of the

first amendment right to petition. At times this activity, disguised as petitioning, is simply an effort to interfere directly with a competitor. In that case, the "sham" petitioning activity is not entitled to first amendment protection, *because it is not an exercise of first amendment rights.*

*Clipper Exxpress v. Rocky Mountain Motor Traffic Bureau,* 690 F.2d 1240, 1255–56 (9th Cir.1982) (footnote and citation omitted) (emphasis in the original).

lieved repetition to be essential to the sham exception. In *Hahn,* we found that a claim was stated under the sham exception to the *Noerr-Pennington* doctrine where it was alleged that 13 baseless lawsuits had been filed, which served to prevent a bond issue from being approved due to the pendency of the suits. In that holding, we stressed that a "pattern of baseless, repetitive claims" would come within the sham exception. 615 F.2d at 840. However, we did not consider the case of a single baseless suit, nor did we hold that a single suit could not fall within the sham exception. As the opinion in *Clipper Exxpress* noted, the existence of multiple baseless suits will undoubtedly make it easier to prove the lack of legitimate intent necessary for the sham exception, but "it is entirely conceivable that the requisite sham intent can be proven when there is only a single sham suit." *Clipper Exxpress,* 690 F.2d at 1256.

As it appears the district court's dismissal may have been based, at least in part, on the lack of proof of repetitiveness in the filing of baseless suits, the sufficiency of the complaint must be reconsidered under the *Clipper Exxpress* analysis.

## SUFFICIENCY OF THE COMPLAINT

Appellee Heliodyne urges affirmance of the district court's dismissal of the action on the grounds that the complaint does not sufficiently allege facts necessary for the claim to fall within the sham exception to *Noerr-Pennington.* We decline to so do.

■ In its claim for relief, ECI alleged that Heliodyne and its coconspirators had used the lawsuit to generate adverse newspaper publicity and television coverage, thereby seeking to competitively harm ECI. These allegations may be sufficient to state a claim of abuse of judicial process,[3] on the grounds that the lawsuit was instituted for an unlawful purpose and the defendants committed specific acts outside the judicial process in furtherance of that purpose. *Associated Radio Service Co. v. Page Airways, Inc.,* 624 F.2d 1342, 1358 (5th Cir.1980), *cert.*

*denied,* 450 U.S. 1030, 101 S.Ct. 1740, 68 L.Ed.2d 226 (1981).

In its memorandum decision, the district court did not specify that an independent basis for dismissal was the insufficiency of the complaint. It would be improper for this court now to affirm a dismissal on a basis not articulated by the trial court.

■ This conclusion is consistent with the rigorous standard of review applied to dismissals of antitrust complaints, a standard especially appropriate in such cases because proof is often in the hands of the alleged conspirators. *Hospital Building Co. v. Trustees of Rex Hospital,* 425 U.S. 738, 746, 96 S.Ct. 1848, 1853, 48 L.Ed.2d 338 (1976). Courts may properly be more critical in reviewing complaints which invoke the sham exception to the *Noerr-Pennington* doctrine since the conduct is presumptively protected by the first amendment, involving here the right of access to the court. *Franchise Realty Interstate Corp. v. San Francisco Local Joint Executive Board,* 542 F.2d 1076 (9th Cir.1976), *cert. denied,* 430 U.S. 940, 97 S.Ct. 1571, 51 L.Ed.2d 787 (1977). However, it is a question of fact in each instance whether an action is a genuine attempt to influence governmental action or is a mere sham. *Clipper Exxpress,* 690 F.2d at 1253. Here, plaintiff alleged facts which may be sufficient to support a claim under the sham exception. This claim should not be finally determined without the benefit of further facts. The parties are entitled to conduct some discovery of matters pertinent to the genuiness of the lawsuit before dismissal or summary judgment.

Accordingly, the judgment of the district court is reversed and the matter remanded for further proceedings consistent with this opinion.

REVERSED.

---

3. In *Clipper Exxpress,* we held that "some abuse of process" is all that must be sufficiently alleged to render a summary judgment by the district court improper. *Clipper Exxpress,* 690 F.2d at 1259.

MERRILL, Circuit Judge, concurring:

I concur in Judge Poole's opinion. I add this note to express the view that whether the state court suit that is the subject of the complaint is sham will depend on the purpose of the plaintiffs in bringing it rather than on the purpose of Heliodyne in promoting it.