INTERSTATE PROPERTIES, Plaintiff,

v.

PYRAMID COMPANY OF UTICA, Robert J. Congel, Leonard Leveen, James McDonald, Joseph Scuderi, Gerald Dick, Woodchuck Hill Associates, and Teachers Insurance and Annuity Association, Defendants.

No. 81 Civ. 1874.

United States District Court, S.D. New York.

April 9, 1984.

Finley, Kumble, Wagner, Heine, Underberg & Casey, New York City, for plaintiff; Neil Underberg, Alan M. Gelb, P.C., Jerome Kowalski, Frederick S. Gold, New York City, of counsel.

Donovan Leisure Newton & Irvine, New York City, and Bond, Schoeneck & King, Syracuse, N.Y., for Pyramid defendants; Sanford M. Litvack, New York City, and Thomas J. Valenti, James E. Wilber, Syracuse, N.Y., of counsel.

Fried, Frank, Harris, Shriver & Jacobson, New York City, for defendant Teachers Insurance and Annuity Association; Gregory P. Joseph, New York City, of counsel.

## OPINION

ROBERT L. CARTER, District Judge.

The motion to vacate the March 18, 1984 Addendum to the Opinion of February 23, 1984, is granted. The Addendum is vacated and recalled. Movant is correct in part in alleging that the Addendum is based upon a mistake of fact.

Defendants, Pyramid Company of Utica, Robert J. Congel, Leonard Leveen, James McDonald, Joseph Scuderi, Gerald Dick, and Woodchuck Hill Associates (hereinafter referred to collectively as Pyramid or Pyramid defendants), filed counterclaims in this action. Three of these counterclaims alleged Sherman Act violations. Pyramid contends that Interstate made fraudulent misrepresentations to the New York State Department of Environmental Conservation ("NYSDEC") at hearings held between August and October, 1977 on Pyramid's application to build a shopping mall on wetlands in the Utica-Rome, New York area, close to the site on which the mall, which is the subject of this litigation, was built; that those fraudulent representations were made to block Pyramid from building an enclosed shopping mall and to preserve In-

terstate's monopoly on enclosed shopping malls in the Utica, New York area. The fraudulent misrepresentations are said to be Interstate's not revealing to the NYSDEC hearing officer that Interstate, itself, wanted to build an enclosed mall on wetlands in the area. It is also contended that subsequent to the NYSDEC's denial of Pyramid's application, Interstate joined forces with Pyramid as the Joint Venture and took the opposite position to that presented at the 1977 NYSDEC hearings, seeking this time successfully to secure permission from NYSDEC to build the instant shopping mall on state wetlands.

At the commencement of the trial, it was agreed that plaintiff would proceed first with its contract case, and, thereafter, Pyramid would proceed with the evidence on the counterclaims. Plaintiff, from the outset, took the position that the counterclaims' antitrust allegations were legally deficient. Pyramid set forth its legal theory as to the basis for the counterclaims in colloquy with the court. Tr. 1031–1039. The claim was said to be "narrowly focused ... on the Noerr-Pennington doctrine the sham exception." *Id.* at Tr. 1031.

On the final day of the trial, Pyramid was allowed to make an offer of proof on its antitrust allegations as to how, if permitted, it proposed to proceed. Counsel stated that he proposed to establish the merits of the claims through Robert Congel, Steven Roth of Interstate and damages through James Anthony Tuòzzolo, Pyramid's accountant. Counsel proposed to question Congel concerning the background leading up to the proposed mall, the filing of Pyramid's application with NYSDEC for permission to build on the state wetlands, the facts that gave rise to the applications and the effort Pyramid undertook in their preparation, the nature of Interstate's posture at the hearings, conversations Congel had with Roth concerning the true facts, showing what was going on behind the scenes and the testimony concerning the Joint Venture and the change in approach of Interstate in 1979.

While conceding that Interstate disclosed its competitive posture at the 1977 hearings, Pyramid's counsel alleged that Interstate misled NYSDEC "on their own intentions and their own determination as to economic need," for a mall in the area. Tr. 1230. Through witnesses Interstate allegedly convinced the hearing officer that there was no paramount economic need for the mall to be built on a site requiring the destruction of 22 acres of state wetlands. Interstate expressly represented to the NYSDEC that it had no interest in building a mall in the area, although conversations between Roth and Congel would establish that Interstate wanted to secure permission to build a regional mall close to the site on which Pyramid was seeking permission to build. Counsel proposed to show that when Pyramid filed its 1977 application seeking to use the wetlands as a site for the mall, it offered to form a substitute wetlands and cede it to the state. Interstate's lawyer took the position that such a course was illegal, but in 1979 when Interstate became a part of the Joint Venture, permission to build the mall on wetlands was granted and the Joint Venture offered to cede substitute wetlands to the state. He proposed to take Roth through his various different positions, his conversations with Congel to establish that Interstate's initial opposition in 1977 to Pyramid's building a mall on wetlands was designed to suppress competition.

For market definition purposes, the product was said to be an enclosed regional mall which is so distinct and different from a strip center regional mall that it is not interchangeable with the latter. Therefore, an enclosed regional mall must be classified as a separate product for purposes of antitrust market analysis and definition. The geographical market was the Utica-Rome, New York metropolitan area. (Tr. 1228–1237 passim).

There are standing problems for these defendants, since the entity involved in the 1977 NYSDEC hearings was Pyramid Systems, Inc., apparently a Pyramid related company (see Feb. 23, 1984 slip. opinion), but not the Pyramid Co. involved in this

proceeding. *Sierra Club v. Alexander*, 484 F.Supp. 455, 460 (N.D.N.Y.), *aff'd*, 633 F.2d 206 (2d Cir.1980). Moreover, the NYSDEC office at the 1979 hearings "made a finding that the 1979 project was an entirely new proposal and not a resubmission of the 1977 plan" *Id.* at 461. These questions were not even addressed in defendants' proffer which would be enough to reject the counterclaims as insufficiently proved.

Assuming arguendo that these issues were put to one side, and the merits were considered nonetheless, even accepting the defendants' allegations as summarized above as true, Pyramid cannot bring its claims within the sham exception to the Noerr Pennington doctrine as defined in *Eastern Railroad President's Conference v. Noerr Freight, Inc.*, 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961); *United Mine Workers v. Pennington*, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965); *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972) and cognate cases.

■ *California Motor Transport Co.*, *supra*, first articulated the extension of the Noerr Pennington sham exception to adjudicatory and administrative proceedings. There the Court held that where a defendant abused the administrative process by "a pattern of baseless, repetitive claims", not to influence official behavior but to stifle competition, *id.* at 513, 92 S.Ct. at 613, the activity was not shielded by the First Amendment from the reach of the antitrust laws. In that case the core issue concerning the Court was the effective exclusion of a competitor from the decision making process. *Id.* Subsequent cases have made clear, however, that access to an administrative tribunal is but one facet of the sham exception. *Litton Systems, Inc. v. American Telegraph & Telephone Co.*, 700 F.2d 785, 809 n. 36 (2d Cir.1983). The sham exception embraces the whole spectrum of activities which abuse and corrupt the administrative process to further anticompetitive objectives. Nor is repetitive activity required. In the context of

this case, a one time debasement of the NYSDEC 1977 hearings to achieve Interstate anticompetitive ends would suffice to bring the sham exception into play. *Energy Conservation, Inc. v. Heliodyne, Inc.*, 698 F.2d 386 (9th Cir.1983); *Clipper Express v. Rocky Mt. Motor Tariff Bureau*, 690 F.2d 1240 (9th Cir.1982).

■ The cases are clear, however, that Interstate does not violate the antitrust laws in opposing before the NYSDEC Pyramid's application for permission to destroy wetlands to build a mall, even though its motive is to deal a fatal blow to a competitor. *Eastern Railroad President's Conference v. Noerr Motor Freight, Inc.*, *supra*, 365 U.S. at 135, 81 S.Ct. at 528; *United Mine Workers of America v. Pennington*, *supra*, 381 U.S. at 670, 85 S.Ct. at 1593. Nor would even a pattern of activities or a multiplicity of activities with an anticompetitive intent suffice. *Ad Visor, Inc. v. Pacific Tel. & Tel. Co.*, 640 F.2d 1107 (9th Cir.1981). Pyramid is required to show that Interstate subverted the integrity of the NYSDEC process or impaired the fair and impartial functioning of that agency in 1977. *Landmarks Holding Corp. v. Bermant*, 664 F.2d 891 (2d Cir.1981); *Federal Prescription Service, Inc. v. American Pharmaceutical Assn.*, 663 F.2d 253 (D.C.Cir.1981), *cert. denied*, 455 U.S. 928, 102 S.Ct. 1293, 71 L.Ed.2d 472 (1982).

■ Solicitation of governmental action to obtain an economic or competitive advantage is not prohibited by the antitrust laws. *Central Savings & Loan Assn. of Chariton, Iowa v. Federal Home Loan Bank Bd.*, 422 F.2d 504 (8th Cir.1970). Thus, the fact that Interstate did not disclose to the hearing officer in 1977 that it wanted to build a mall in the area is not sufficient to encumber its 1977 opposition to Pyramid with Sherman Act overtones. Pyramid was before the NYSDEC seeking, as I understand it, to convince the agency that it should be permitted to destroy 22 acres of wetlands because economic need for the mall outweighed the environmental loss the public would suffer. Even if Interstate stated to the hearing officer that it had no

interest in building a mall, although it was privately and in reality prepared to build if permitted, no sham exception can be invoked on that scenario. The deliberate misrepresentation is to be faulted, but that misrepresentation could not have been material to the NYSDEC conclusion that Pyramid had failed to establish an economic necessity warranting the wetlands' destruction. The decision of the hearing officer had to concern to what extent the area's economic well being would be served by the mall, and would the gain to the public thereby be greater than the ecological loss that would be required.

Moreover, whatever Interstate's motive, a denial to Pyramid to build the mall would not necessarily result in Interstate's being permitted to do so. It would have to file an application with the NYSDEC, and if its plans were to seek to use wetlands as a site for construction, it would have to successfully establish economic need. Pyramid contends that this is what happened when Interstate joined forces with Pyramid in the Joint Venture. In 1979, Interstate's lawyers, now working for the Joint Venture, apparently successfully guided the new application through NYSDEC proceedings. Even if Interstate's activities in 1977 could be traced to the Joint Venture activities in 1979 in respect of NYSDEC, all that shows is Interstate's skillful use of the administrative process.

Pyramid would have to establish bribery, fraud or unethical procedures by Interstate that corrupted the hearing officer and robbed or attempted to rob him of independent judgment. Proof that Interstate conspired with the hearing officer or NYSDEC staff to secure denial of Pyramid's 1977 application would bring the sham exception into play. *Hopkinsville Cable TV v. Pennyroyal Cable Television, Inc.*, 562 F.Supp. 543, 546–47 (W.D.Ky.1982). That kind of proof is not close to what Pyramid seeks to prove. Although counsel insists he does not intend to do so, his proffered proof is designed to regurgitate the arguments and contentions at the 1977 hearings, with counsel seeking to establish here that Interstate's opposition was without

foundation. Not every business tort can be molded into an antitrust violation. Here the proof is insufficient to lift the shield which the First Amendment affords.

Antitrust claims raised in the counterclaims are dismissed as legally deficient. Because of the basis of this holding, Interstate's collateral estoppel and time barred contentions need not be reached.

In so far as Pyramid's counterclaims raised allegations other than Sherman Act violations, no proof was presented or offered in support of those counterclaims. Accordingly, they are dismissed as waived and unproved.

All counterclaims are dismissed.

IT IS SO ORDERED.